United States District Court
Middle District of Florida
Orlando Division

CHRISTOPHER JAMES SIGNORELLO,

     *Plaintiff,*

v.                            **No. 6:19-cv-1470-Orl-18PDB**

COMMISSIONER OF SOCIAL SECURITY,

     *Defendant.*

---

## Report and Recommendation

Christopher James Signorello brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.[1] Under review is a decision by the Administrative Law Judge ("ALJ") dated October 2, 2018. Tr. 7−27. Signorello contends the ALJ erred in finding his statements were not entirely consistent with the medical evidence. Doc. 29 at 7−10. The Commissioner disagrees. Doc. 30.

---

[1]The Social Security Administration ("SSA") uses an administrative review process a claimant ordinarily must follow to receive benefits or judicial review of a denial of benefits. *Bowen v. City of New York*, 476 U.S. 467, 471−72 (1986). A state agency acting under the Commissioner's authority makes an initial determination. 20 C.F.R. §§ 404.900−404.906, 416.1400−416.1406. If dissatisfied with the initial determination, the claimant may ask for reconsideration. 20 C.F.R. §§ 404.907−404.918, 416.1407−416.1418. If dissatisfied with the reconsideration determination, the claimant may ask for a hearing before an Administrative Law Judge ("ALJ"). 20 C.F.R. §§ 404.929−404.943, 416.1429−416.1443. If dissatisfied with the ALJ's decision, the claimant may ask for review by the Appeals Council. 20 C.F.R. §§ 404.967−404.982, 416.1466−416.1482. If the Appeals Council denies review, the claimant may file an action in federal district court. 20 C.F.R. §§ 404.981, 416.1481.

## Background

Signorello was born in 1972. Tr. 57. He completed some college and has experience as a customer complaint clerk and technical support worker. Tr. 19, 57–58, 340.

Signorello obtained mental health treatment from 2015 to 2018, primarily for depression and anxiety. On average, he sought treatment every two to three months from 2015 to 2016 but less frequently from 2017 to 2018. His mental status examinations showed some normal findings, describing Signorello as alert, oriented, pleasant, cooperative, adequately groomed, hygienic, displaying a logical thought process, having good eye contact, having normal speech, and having fair insight and judgment. Tr. 473, 499, 505, 529, 537, 561, 626. But his mental status examinations also showed he was anxious, depressed, irritable, sometimes had a blunted affect, and had moderately impaired attention and concentration. Tr. 473, 499, 505, 529, 537, 561, 626. The medical providers treated him with various prescription medications, including Prozac, Vistaril, Seroquel, Celexa, Latuda, Ativan, Xanax, Buspar, Klonopin, and Lexapro. Tr. 481, 489, 499, 538, 559.

Signorello alleges he became disabled on March 30, 2015, from anxiety, depression, and asthma, Tr. 339. He proceeded through the administrative process, failing at each level. Tr. 1–6, 7–27, 113, 133, 134, 165–70, 172–81. This action followed.

## ALJ's Decision

The ALJ conducted two administrative hearings, the first on January 24, 2018, and the second on September 24, 2018. Tr. 50–89, 90–112. Signorello was represented by counsel at both hearings. Tr. 52, 92. The ALJ entered a decision on October 2, 2018. Tr. 7–27.

2

At step one,[2] the ALJ found Signorello has not engaged in substantial gainful activity since March 30, 2015, the alleged onset date.[3] Tr. 13.

At step two, the ALJ found Signorello suffers from severe impairments of depression and anxiety. Tr. 13. The ALJ also found Signorello suffers from non-severe impairments of asthma and chalazion of the left upper eyelid. Tr. 13.

At step three, the ALJ found Signorello has no impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 13–14. The ALJ considered the "paragraph B"[4] criteria to determine if Signorello's mental impairments meet or

---

[2]The SSA uses a five-step sequential process to decide if a person is disabled, asking whether (1) he is engaged in substantial gainful activity, (2) he has a severe impairment or combination of impairments, (3) the impairment meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1, (4) he can perform any of his past relevant work given his residual functional capacity ("RFC"), and (5) there are a significant number of jobs in the national economy he can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[3]The ALJ found Signorello had worked after the alleged onset date but unsuccessfully and his average monthly earnings did not rise to substantial gainful activity. Signorello stopped work after less than six months. Tr. 13; *see* 20 C.F.R. §§ 404.1574(c) (quoted here) and 416.974(c) ("[W]ork you have done will not show that you are able to do substantial gainful activity if, after you worked for a period of 6 months or less, your impairment forced you to stop working or to reduce the amount of work you do so that your earnings from such work fall below the substantial gainful activity earnings level [.]"); Social Security Ruling ("SSR") 84-25, 1984 WL 49799 (Jan. 1, 1984) (explaining determination of substantial gainful activity if substantial work activity is discontinued or reduced).

[4]The paragraph B criteria are used to assess functional limitations imposed by medically determinable mental impairments. 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00(C). The SSA considers the claimant's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(1)–(4), 416.920a(c)(1)–(4) (citing 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00E). To satisfy the "paragraph B" criteria, the mental impairment must result in "an 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00(A)(2)(b).

equal the criteria of a listing. Tr. 14–15. He found Signorello has a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in maintaining concentration, persistence, and pace; and a mild limitation in adapting or managing himself. Tr. 14–15. For each finding, the ALJ detailed supporting medical and other evidence. Because Signorello's mental impairments did not cause at least two marked limitations or one extreme limitation, the ALJ found the "paragraph B" criteria were not satisfied. Tr. 15. The ALJ also considered the "paragraph C"[5] criteria and found they too were not satisfied. Tr. 15.

The ALJ explained Signorello had reported:

He is disabled due to depression, anxiety, and obsessive-compulsive disorder. He receives mental health treatment at Seminole Community Mental Health Center and Orlando Behavioral Healthcare. He has 5 panic attacks a day, poor concentration, racing thoughts, crying spells, and difficulty interacting with others. His medications do not cause any side effects. As for his daily activities, the claimant testified that he lives alone. His parents live nearby and they help him with shopping and paying bills. He is able to do laundry and household chores. He also walks his two dogs regularly, takes his car to get washed, and runs errands.

Tr. 16 (internal citations omitted).

Regarding Signorello's self-reported limitations, the ALJ stated:

While the claimant reported severe limitations due to depression and anxiety, the medical evidence viewed in its entirety fails to show a disabling level of impairment. Specifically, the claimant has not required hospitalizations or emergency room treatment for symptoms related to a mental disorder since the alleged onset date. Additionally, on mental status examinations, he denied suicidal and homicidal ideations and repeatedly demonstrated an appropriate appearance, cooperative behavior, fair insight and judgment, mildly impaired attention and concentration, intact memory, logical thought process,

---

[5]Paragraph C lists additional functional criteria for some listings. 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00(A).

and normal fund of information. I also find the claimant's reported daily activities are not strongly consistent with complaints of disabling symptoms and limitations. For example, the claimant was able to perform basic acts related to self-care independently, care for his dogs, prepare meals, do laundry, clean, do yard work, drive a vehicle, and shop.

Overall, the claimant's allegations are not supported by the evidence to the extent that he would be precluded from all work activity. While the claimant would require modification in his interactions with coworkers, supervisors, and the general public, and limitations to making simple work-related decisions, those restrictions would reasonably accommodate his symptoms.

Tr. 17–18 (internal citations omitted).

After stating he had considered the entire record and summarizing the evidence, the ALJ found Signorello has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations:

[T]he claimant is limited to performing simple, routine, and repetitive tasks, but not at a production rate pace (e.g. assembly line work). He is limited to making simple work-related decisions. He can have occasional interaction with supervisors and no interaction with coworkers and the public.

Tr. 16.

At step four, the ALJ found Signorello cannot perform his past relevant work[6] as a customer complaint clerk. Tr. 19.

---

[6]"Past relevant work" is "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).

At step five, the ALJ found Signorello could perform the jobs of window cleaner, floor waxer, and shirt presser, and those jobs exist in significant numbers in the national economy. Tr. 20. The ALJ therefore found no disability. Tr. 21.

## Standard of Review

A court reviews the Commissioner's factual findings for substantial evidence. 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and alteration omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* "Substantial evidence … is more than a mere scintilla. … It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

If substantial evidence supports an ALJ's decision, a court must affirm, even if other evidence preponderates against the factual findings. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

The substantial-evidence standard applies only to factual findings. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). "The Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (quoted authority and alterations omitted).

## Law & Analysis

A claimant's statements about symptoms alone cannot establish disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). In evaluating a claimant's subjective complaints of

pain or other symptoms, an ALJ must determine whether there is an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptom arising from that condition or (2) evidence the condition is so severe that it can be reasonably expected to cause the alleged symptom. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the objective medical evidence does not confirm the alleged severity of a claimant's symptom, but an impairment can be reasonably expected to cause that alleged severity, the ALJ must evaluate the intensity and persistence of the alleged symptoms and their effect on ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In doing so, the ALJ must consider all evidence, including objective medical evidence and statements from the claimant and others. *Id.* §§ 404.1529(c)(2)–(3), 416.929(c)(2)–(3). The ALJ also must consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." *Id.* §§ 404.1529(c)(4), 416.929(c)(4). An ALJ must articulate his reasoning.[7] *Holt*, 921 F.2d at 1223.

Here, the ALJ undertook this process, and his decision describes substantial evidence supporting his finding the record fails to fully support Signorello's statements.

The ALJ found Signorello's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely

---

[7]Effective March 28, 2016, SSR 16-3p rescinded a previous SSR on credibility of a claimant. SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (republished). The SSR removed "credibility" from policy because the regulations do not use that term. *Id.* The SSR clarified that "subjective symptom evaluation is not an examination of an individual's character" and provided a two-step evaluation process. *Id.* Because the ALJ issued his decision on October 2, 2018, Tr. 21, the new SSR applies here. *Cf. Hargress v. Soc. Sec. Admin.*, 883 F.3d 1302, 1308 (11th Cir. 2018) (holding new SSR did not apply when the ALJ issued his decision before the SSR effective date).

consistent with the medical evidence and other evidence in the record. Tr. 16. The ALJ provided the following reasoning.

The ALJ observed Signorello had been treated for major depressive disorder and anxiety disorder at Seminole Community Mental Health Center from March to August 2015 and explained mental status findings conveyed that Signorello had displayed an appropriate appearance, pleasant and cooperative behavior, logical and concrete thought process, good eye contact, normal speech, fair insight and judgment, an appropriate mood and affect, and no suicidal or homicidal ideations. Tr. 17, 461, 472–74.

The ALJ observed Signorello had been treated at Care Spot Urgent Care in March 2018 and had displayed an appropriate mood and affect and normal insight, judgment, and memory. Tr. 17, 649.

The ALJ observed Signorello "has not required hospitalizations or emergency room treatment for symptoms related to a mental disorder since the alleged onset date." Tr. 17.

The ALJ observed Signorello lives alone. Tr. 16. The ALJ recounted Signorello's daily activities, including performing basic acts of self-care, caring for his dogs, preparing meals, doing laundry, cleaning, doing yard work, driving, maintaining a vehicle, and shopping. Tr. 17, 73–74, 106, 350–53, 626. The ALJ found these activities inconsistent with an inability to perform all work. Tr. 17–18.

The restrictive RFC reflects that the ALJ credited much of the record regarding Signorello's mental limitations. In fact, the ALJ included more restrictive limitations in the RFC than the medical opinions suggested. State-agency psychological consultants Robert Hodes, Ph.D., and Sanford Golin, Ph.D., opined that Signorello could relate appropriately with the public, coworkers, and supervisors, and that he could respond appropriately to changes in a routine work setting and adapt to the demands and pressures of simple, routine work settings. Tr. 18, 120, 130, 146, 158.

Consultative examiner Ada Ramirez, Ph.D., opined that Signorello had no limitations with the public, supervisors, and coworkers. Tr. 18, 628. The ALJ, however, only afforded these opinions partial weight because he found Signorello required greater social limitations based on treatment records. Tr. 18.

Signorello's primary complaint is that the ALJ used boilerplate language. *See* Doc. 29 at 8. Boilerplate language is not necessarily objectionable—lawyers and judges alike "cut and paste" language rather than "reinventing the wheel" and saying the same thing in different ways. What matters is whether the ALJ went beyond the boilerplate language, analyzed the record, and made individualized findings. Here, the opinion shows the ALJ did just that. *See McGill v. Comm'r of Soc. Sec.*, 682 F. App'x 738, 741 (11th Cir. 2017) (finding substantial evidence supported ALJ's credibility determination despite appellant's argument ALJ used boilerplate language).

Signorello complains the ALJ never explained his reasons for discounting Signorello's statements, rendering the decision too vague for meaningful review. Doc. 29 at 7–9. The ALJ's decision shows otherwise; the ALJ in fact explained his reasons for discounting Signorello's statements. Tr. 17–18.

Although Signorello cites evidence that might have supported a different finding, the Court may not reweigh the evidence or substitute its judgment for the Commissioner's judgment. *See Moore*, 405 F.3d at 1213. That substantial evidence supports the ALJ's finding suffices.

## Recommendation

I recommend:

(1)     affirming the Commissioner's decision;

(2)     directing the Clerk of Court to enter judgment under sentence four of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) for the

Commissioner of Social Security and against Christopher James Signorello; and

(3)    directing the Clerk of Court to close the file.[8]

**Entered** in Jacksonville, Florida, on July 31, 2020.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    Shea Fugate, Esquire
John Rudy, Assistant United States Attorney

---

[8]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id*. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.